UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                       :
DARNELL STEWART,                       :
                                       :
            Petitioner,                :     Civ. No. 18-17197 (NLH)
                                       :
      v.                               :     OPINION
                                       :
ATTORNEY GENERAL OF THE STATE          :
OF NEW JERSEY, et al.,                 :
                                       :
            Respondents.               :
_____:

APPEARANCES:

Darnell Stewart
567134/136118C
New Jersey State Prison
PO Box 861
Trenton, NJ 08625

      *Petitioner Pro se*

Grace C. MacAulay, Camden County Prosecutor
Linda A. Shashoua, Chief, Motion and Appeals Unit
Camden County Prosecutor's Office
200 Federal Street
Camden, NJ 08103

      *Counsel for Respondents*

HILLMAN, District Judge

      Pro se petitioner Darnell Stewart, a state prisoner at New

Jersey State Prison in Trenton, New Jersey, petitions for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.

Stewart challenges his 2006 conviction for first-degree

kidnapping, first-degree aggravated sexual assault, and related

offenses on the basis that he received ineffective assistance of trial counsel.  For the reasons below, the petition will be denied and a certificate of appealability shall not issue.

I.   BACKGROUND

A.   Factual Background[1] and Procedural History

On collateral appeal, the Superior Court of New Jersey, Appellate Division, summarized the evidence underlying Stewart's conviction as follows:

> On October 23, 2014, at approximately 7:00 a.m., B.S. was physically attacked and sexually assaulted in Camden.  B.S. testified her attacker hit her in the face, grabbed her by the neck, and forced her to an area under a highway underpass.  There, defendant ordered B.S. to lower her pants and bend over.  Her attacker then rubbed his penis between her buttocks and vagina. Specifically, B.S. "felt his head going into [her] vagina, but not all the way, and that's when [she] made an attempt to run."  However, B.S.'s attacker grabbed her, "punched [her] like a punching bag," and forced her back to the overpass area.  This second time, her attacker ordered B.S. to bend over, and attempted to enter her, but could not achieve an erection, despite "[r]ubbing against [her] butt again, trying to get it hard."  B.S.'s attacker stated he should have killed B.S., then left the area.
>
> B.S. screamed for help but no one responded.  She went home and called the police who transported her to the hospital within one hour of the attack.  At the hospital, a forensic examination was performed.  B.S. suffered multiple contusions to her face, back and chest, including a split eyebrow and split lip.  The Sexual Abuse Nurse Examiner ("SANE"), who examined B.S., testified B.S. did not sustain any evidence of injury to her vaginal area.  Secretions from B.S.'s vagina, cervix, "right scapula, right buttocks, [and]

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), this Court affords deference to the factual determinations of the State court.

right calf," were swabbed and collected as part of the sexual assault examination.

The SANE testified pre-ejaculate serum contains sperm and can be discharged whether or not a man ejaculates. On cross-examination, defense counsel attempted to elicit from the SANE testimony that it is highly unlikely, without ejaculation, fluid would travel to the cervix.  However, the SANE responded:

> The penis does not have to be fully entered into the vagina for serum to get in there. So, if someone attempted to insert the penis into the vagina, some pre-ejaculate fluid or ejaculate could be deposited at the end of the vagina and could migrate upwards towards the cervix.

Forensic testing of DNA evidence contained in B.S.'s sexual assault kit matched defendant's DNA.  At trial a State Police chemist, qualified as an expert in biological stain analysis, testified that B.S.'s sexual assault kit contained vaginal, anal, oral, and external genital specimens, head and pubic hair combings, fingernail specimens, buccal controls swabs, debris and dried secretions.  She tested the vaginal and cervical samples but did not test all of the specimens because she felt the samples she had examined were sufficient "to generate a DNA profile." On cross-examination, trial counsel elicited testimony that B.S.'s cervical specimen contained more than an average quantity of sperm.

Six months after the assault, B.S. identified defendant from a photo array.  She was sixty-percent certain defendant was her attacker.  B.S. identified defendant in court and testified she had never seen him before the day of the attack.  Defendant called an investigating police officer and defense investigator to establish inconsistencies between B.S.'s testimony and her prior statements.

Defendant did not testify at trial. . . .

During a pretrial _Wade_ hearing,[2] trial counsel first suggested B.S. and defendant had engaged in sexual intercourse on an unspecified "earlier date."  Over trial counsel's objection, the trial court ruled admissibility of defendant's alleged prior sexual relations with B.S. was governed by the Rape Shield Law. _N.J.S.A._ 2C:14-7.[3]  Notwithstanding lack of

---

[2] A _Wade_ hearing is a preliminary inquiry to determine the admissibility of an identification. _United States v. Wade_, 388 U.S. 218, 242 (1967).

[3] The Rape Shield Law provides, in relevant part, that in prosecutions for, _inter alia_, aggravated sexual assault and sexual assault:

evidence of the victim's previous sexual conduct shall not be admitted . . . except as provided in this section. When the defendant seeks to admit such evidence for any purpose, the defendant must apply for an order of the court . . . . After the application is made, the court shall conduct a hearing in camera to determine the admissibility of the evidence.  If the court finds that evidence offered by the defendant regarding the sexual conduct of the victim is relevant and highly material and meets the requirements of subsections c. and d. of this section and that the probative value of the evidence offered substantially outweighs its collateral nature or the probability that its admission will create undue prejudice, confusion of the issues, or unwarranted invasion of the privacy of the victim, the court shall enter an order setting forth with specificity what evidence may be introduced and the nature of the questions which shall be permitted . . . .

. . .

c. Evidence of previous sexual conduct with persons other than the defendant which is offered by any lay or expert witness shall not be considered relevant unless it is material to proving the source of semen, pregnancy or disease.

d. Evidence of the victim's previous sexual conduct with the defendant shall be considered relevant if it is probative of whether a reasonable person, knowing what the defendant knew at the time of the alleged offense, would have believed that the alleged victim freely and affirmatively permitted the sexual behavior complained of.

N.J.S.A. § 2C:14-7.

notice, the court afforded defendant the opportunity
for a hearing, pursuant to the statute, but trial
counsel responded that his client did not intend to
testify, nor produce any evidence as to this issue.
Rather, trial counsel intended to cross-examine the
victim and argue his theory to the jury.  In response
to the court's inquiry as to when the alleged sexual
activity occurred, trial counsel responded, "Judge, I
don't know. I'm waiting for the victim to testify."

Because defendant would not avail himself of the
procedures required by the Rape Shield Law, the court
ruled trial counsel would be limited to arguing "it
would be impossible for the crime to have been
committed because [defendant] did [not] have an
erection or he didn't ejaculate or did [not] leave any
genetic material without going . . . to the next step
and saying they had sex on some prior occasion."
Nevertheless, during summation, without objection by
the State or interference from the court, defense
counsel implied defendant and B.S. had sex on a prior
occasion, that is, defendant "obviously and fully
penetrated [B.S.] and left his semen.  But it was not
under the circumstances she described."

State v. Stewart, No. A-5142-14T4, 2017 WL 6014425, at *1–2

(N.J. Super. Ct. App. Div. Dec. 5, 2017) (footnotes omitted).

In June 2006, a jury convicted Stewart of first-degree

kidnapping, first-degree aggravated sexual assault, second-

degree sexual assault, and second-degree attempt to commit

sexual assault. ECF No. 16-5.  The Appellate Division affirmed.

State v. Stewart, No. A-2745-06T4, 2009 WL 1139116, at *9 (N.J.

Super. Ct. App. Div. Apr. 29, 2009).  After a remand for

resentencing, Stewart was sentenced to an aggregate term of 60

years' imprisonment with no possibility of parole. State v.

Stewart, No. A-5142-14T4, 2017 WL 6014425, at *1 (N.J. Super.

Ct. App. Div. Dec. 5, 2017).

Stewart petitioned for post-conviction relief ("PCR"), claiming ineffective assistance of counsel.  ECF No. 16-18.  The Appellate Division summarized the procedural history of Stewart's PCR petition as follows:

> In January 2010, defendant filed a pro se [post-conviction relief ("PCR")] petition alleging his trial counsel was ineffective for, among other things, failing to investigate alibi witnesses and failing to conduct an effective cross-examination of the State's witnesses.  PCR counsel subsequently was appointed to represent defendant ("first PCR counsel").
>
> In September 2010, defendant sent correspondence to his first PCR counsel which essentially incorporated a "supplemental letter brief" to file on his behalf.  Defendant claimed, without certifying or providing details, that B.S. was a prostitute, and a second DNA test would support his consensual sexual intercourse "theory."
>
> In November 2010, first PCR counsel filed an amended petition, alleging appellate counsel was ineffective for, among other things, "not raising denial of DNA testing on his direct appeal."  However, first PCR counsel did not file defendant's proposed supplemental letter brief in any form.
>
> On November 17, 2010, defendant sent a twenty-five-page document to first PCR counsel, certifying the information therein was "truthful to the best of his knowledge."  Defendant asserted, for the first time, he engaged in consensual sex with the victim three days prior to the incident.  He also claimed the victim was a prostitute and that he paid her half of her fee in cash and half with drugs in exchange for sex.
>
> In May 2011, the first PCR judge denied relief, essentially determining defendant's petition was unsupported by competent evidence.  As to defendant's claim that his appellate counsel was ineffective for failing to raise "the denial of DNA testing," the PCR

judge found, "[t]he simple flaw in this argument is that there was DNA testing in this case.  And the results, which linked defendant to the victim through sexual penetration, were never disputed."  Defendant appealed the first PCR court's decision.

Having found defendant's first PCR counsel failed to advance his pro se arguments, we reversed and remanded for a new hearing with new PCR counsel.

In June 2014, new PCR counsel was assigned to represent defendant ("second PCR counsel").  In July 2014, a forensic DNA consultant hired by second PCR counsel, determined certain specimens collected from the victim's body were never tested.  Those specimens were "anal swabs . . . external genital swabs . . . [and] dried secretions collected from the exterior of the victim's body" ("additional specimens").

In February 2015, defendant filed a pro se motion to compel the State to produce specimen evidence for post-conviction DNA testing.  In March 2015, [second] PCR counsel filed a brief in support of defendant's motion and PCR petition.

In a comprehensive oral opinion rendered on April 29, 2015, following oral argument, Judge Frederick J. Schuck denied defendant's motion and PCR petition.

State v. Stewart, No. A-5142-14T4, 2017 WL 6014425, at *3 (N.J.

Super. Ct. App. Div. Dec. 5, 2017) (footnote and citation

omitted).

The Appellate Division affirmed "substantially for the

reasons Judge Schuck expressed in his well-reasoned oral

opinion." Id. Stewart's petition for certification was denied.

State v. Stewart, 233 N.J. 305, 184 A.3d 911 (2018).

B.   The Habeas Petition

Stewart filed his § 2254 petition in December 2018,

alleging that his conviction was obtained in violation of his

Sixth Amendment right to effective assistance of counsel.  ECF
No. 1.  In July 2019, respondents moved to dismiss the petition
as untimely.  ECF No. 7.  In April 2020, the Court denied the
motion and ordered respondents to answer.  ECF Nos. 12, 13.
Respondents answered in June 2020 (ECF No. 16) and Stewart
replied in March 2021 (ECF No. 20).  The matter is therefore
fully submitted and ready for decision.

II.  STANDARD OF REVIEW

The district court "shall entertain an application for a
writ of habeas corpus in behalf of a person in custody pursuant
to the judgment of a State court only on the ground that he is
in custody in violation of the Constitution or laws or treaties
of the United States."  28 U.S.C. § 2254(a).  A habeas
petitioner must establish entitlement to relief for each claim
in his petition based upon the record that was before the state
court. See Eley v. Erickson, 712 F.3d 837, 846 (3d Cir. 2013);
Parker v. Matthews, 567 U.S. 37, 40-41 (2012).  District courts
must be "highly deferential" to the determinations of state
trial and appellate courts. See Renico v. Lett, 559 U.S. 766,
773 (2010).

If the state courts have adjudicated a claim on the merits,
the district court shall not grant a writ of habeas corpus
unless that adjudication:

(1) resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme
Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of
the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  Federal law is "clearly established" for these purposes if it is clearly expressed in "the holdings, as opposed to the dicta" of the United States Supreme Court.  See Woods v. Donald, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." Id.  If a petitioner challenges an allegedly erroneous state court factual determination, that determination "shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The relevant state court decision for federal habeas corpus review is the last reasoned state court decision.  See Bond v. Beard, 539 F.3d 256, 289-90 (3d Cir. 2008).  These standards apply "even where there has been a summary denial" by the state court. Cullen v. Pinholster, 563 U.S. 170, 187 (2011).

III.  DISCUSSION

Stewart asserts that trial counsel was ineffective for failing to: (1) file a motion pursuant to the Rape Shield Law (ECF Nos. 1 at 7, 1-3 at 1-2 (Ground One)), (2) obtain a DNA expert (ECF No. 1 at 8-9 (Ground Two)), (3) sufficiently investigate the facts and law (id. at 10-11 (Ground Three)), and (4) present an alibi witness (id. at 12 (Ground Four)).

A.  Applicable Law

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI; see Strickland v. Washington, 466 U.S. 668, 686 (1984).  A claim of ineffective assistance has two necessary components. Id. at 687.  First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness," id. at 687-88, meaning he "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690.  Second, a petitioner must establish prejudice, i.e., a reasonable probability that the result of the trial would have been different absent the deficient act or omission. Id. at 687.  Further, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Strickland, 466 U.S. at 697.

On habeas review, it is not enough that a federal judge would have found counsel ineffective.  The judge must find that the state court's resolution of the issue was unreasonable, a higher standard. Harrington v. Richter, 562 U.S. 86, 101 (2011). "And while judges may be tempted to second guess defense counsel's decisions, we must keep in mind that 'advocacy is an art and not a science, and . . . strategic choices must be respected in these circumstances if they are based on professional judgment.'" Gaines v. Superintendent Benner Twp. SCI, 33 F.4th 705, 712 (3d Cir. 2022) (quoting Strickland, 466 U.S. at 681).  In other words, "counsel's strategic choices will not be second-guessed by *post-hoc* determinations that a different trial strategy would have fared better." Rolan v. Vaughn, 445 F.3d 671, 681–82 (3d Cir. 2006).

B.  Analysis

1.  Ground One: Failure to File a Rape Shield Motion

Stewart alleges his trial counsel was ineffective for failing to file a motion pursuant to the Rape Shield Law.  ECF No. 1 at 7.  He asserts that he "advised trial counsel that his sperm was found inside the victim because [he] had a consensual sexual encounter with [her] three days before [she] was attacked" (ECF No. 1-3 at 1); "counsel asserted that he could bring [this information out] through cross examination without having to file the motion" (id. at 1-2); and "counsel

11

inexplicably decided to forego the filing of the motion,"
thereby foreclosing (a) cross examination of B.S. about the
alleged prior sexual encounter and (b) questioning the SANE
"about the victim's sexual history as reflected in the medical
records" (id. at 2).  Stewart argues that counsel's failure to
file the motion was not a strategic decision; rather, it was a
"failure to prepare adequately for trial."  ECF No. 20 at 21.
The state courts rejected this claim, finding Stewart failed to
establish ineffective assistance because (a) the motion, if
made, would have been unsuccessful, and (b) counsel argued
during closing that prior consensual sex occurred.

The PCR judge found that the trial court would have denied
the motion on the basis that counsel "could not have made a
sufficiently specific proffer to warrant admissibility of a
prior sexual act" because Stewart's contention that B.S. was a
prostitute and had sex with him three days before the assault
"appears for the first time in petitioner's November 2010 letter
to initial PCR counsel."  ECF No. 16-59 at 24.  The judge found
no evidence that Stewart communicated this information to his
trial counsel.  Id.  Rather, Stewart presented the PCR court
with "a bald assertion that [the] victim was a prostitute and
had sex with him just prior to the crime, a contention which is
undercut by the record and by his different versions of how this
would have transpired." Id.

12

The PCR judge also noted the victim's "clear testimony" that she "had never seen the petitioner before the attack," and found it was "apparent from trial counsel's responses when the rape shield issue is discussed, that he [was] unaware of this contention."  Id.  "More importantly," the judge determined that because counsel referenced a prior sexual encounter during his closing, Stewart failed to establish prejudice.  Id.

In affirming the PCR court, the Appellate Division added the following:

> [T]he record is completely devoid of any evidence defendant informed trial counsel that B.S. supposedly was a prostitute whom he paid with money and drugs in exchange for sexual intercourse three days prior to the assault.  Indeed, the first mention of his purported defense is partially referenced in the September 2010 letter to first PCR counsel, more than four years after trial, and six years after a crime defendant claims he did not commit.  When a defendant asserts his attorney has inadequately represented him, he must assert the facts that an investigation would have revealed, supported by an affidavit or certification based upon his personal knowledge. Here, defendant has done no more than make bald assertions that he was denied the effective assistance of counsel.

Stewart, 2017 WL 6014425, at *6 (brackets, quotations, and citations omitted).

The state courts' rejection of this claim was not unreasonable.  The PCR court reasonably found that a Rape Shield Law motion would not have been successful; the following pre-trial colloquy between defense counsel and the trial judge

13

indicates that counsel was unaware of Stewart's claim that B.S. was a prostitute with whom he had a consensual sexual encounter three days before she was assaulted:

> THE COURT: First of all, when are you saying that the alleged sexual activity on a consensual basis occurred between them?
>
> [DEFENSE COUNSEL]: Judge, I don't know. I'm waiting for the victim to testify. She won't talk to us, so I don't know.
>
> THE COURT: Okay, because –
>
> [DEFENSE COUNSEL]: I'm hoping to establish that at cross examination.

ECF No. 16-48 at 50.

Stewart's account of a prior sexual encounter also lacks credibility not only because it does not appear in the record prior to 2010, but also because his belated allegations are inconsistent.  The PCR judge explained:

> [T]here is no indication in the record that the defendant ever conveyed to trial counsel his claim that he received B.S.'s sexual services on October 20 in Camden.  Indeed, . . . trial counsel initially declined to make a proffer as to when prior consensual sexual relations between defendant and B.S. may have occurred in support of his mistrial motion.  Trial counsel later suggested that the alleged prior relations between defendant and B.S. occurred in Atlantic City. . . . Even in petitioner's September 2010 letter to PCR counsel, where he claims the victim was a prostitute, petitioner makes no mention that he was her customer three days prior to the assault.

ECF No. 16-59 at 24.

In short, counsel cannot be found to have rendered deficient performance for failing to make a motion that would

14

have been unsuccessful.  See Thomas v. Johnson, No. 15-6740,
2018 WL 11360333, at *9 (D.N.J. May 11, 2018) (explaining that
the "state court did not violate clearly established law in
finding counsel was not deficient under Strickland" where
counsel's "motion would have been unsuccessful"); Telfair v.
United States, No. 13-6585, 2016 WL 632225, at *17 (D.N.J. Feb.
17, 2016) (counsel's failure to move to suppress "could not have
been ineffective assistance of counsel as any such motion would
have been without merit"); Corley v. United States, No.
3:08CR422, 2013 WL 3272411, at *9 (M.D. Pa. June 27, 2013)
(argument that counsel was ineffective by failing to move for
acquittal was meritless because "[t]here is no reasonable
indication that such a motion would have succeeded"); see also
United States v. Aldea, 450 F. App'x 151, 152 (3d Cir. 2011)
("[c]ounsel cannot be ineffective for failing to raise meritless
claims").  Thus, it was not unreasonable for the state courts to
find that Stewart failed to establish the deficient performance
prong of Strickland.

The state courts also reasonably found that, even assuming
counsel rendered deficient performance, Stewart has not
established prejudice because (a) as discussed above, the motion
would not have succeeded, and (b) counsel was "ultimately
permitted to make his argument before the jury that prior

15

consensual sex occurred."  ECF No. 16-59 at 25.  During closing

argument, counsel stated:

> Ladies and gentlemen, I have never contested this, but
> the fact of the matter is Darnell Stewart had to have
> sexual relations with this woman since his sperm was
> found in her cervix.  And this was just more than just
> a small bit of ejaculate up in her cervix.
>
> If you listened to Kerri O'Toole, remember the
> biochemist from the State came in here, this was a
> three plus amount and in a normal slide you would get
> – in a situation like this you might see the average
> amount, it might be two plus.
>
> But, this was more than the average amount.  And for
> that kind of – for that volume of sperm cells to be
> found at the cervix, the only way it could have
> occurred is if there was a full penetration and
> ejaculation.
>
> And the next thing you have to say that goes along
> with it is, well, if this was forceable, where is the
> genital trauma?  And there is none.
>
> . . .
>
> . . . Remember, it's the State's burden in this case
> to firmly convince you that Darnell Stewart forcibly
> and without her consent penetrated her, vaginally
> penetrated her.
>
> And I'm going to pose a couple of rhetorical questions
> as I sum up here: ". . . [A]re you firmly convinced
> there was non-consensual sexual penetration based on
> her testimony and the physical evidence?  Are you
> firmly convinced it was Darnell Stewart who failed to
> obtain an erection, who failed to penetrate her, who
> failed to ejaculate?  Are you firmly convinced that
> Darnell Stewart's pre-ejaculate was deposited on her
> cervix – actually, deposited on her outer vagina and
> penetrated all the way to her cervix?".
>
> Ladies and gentleman, the answer to each of these
> questions is no.  And for these reasons, Darnell
> Stewart is not guilty.

ECF No. 16-53 at 145, 156.

For the reasons above and in light of the strong evidence of Stewart's guilt -- including the DNA evidence, B.S.'s out-of-court and in-court identification, and B.S.'s testimony that she had never seen Stewart before -- it was not unreasonable for the state courts to find that Stewart failed to establish the prejudice prong of <u>Strickland</u>.  <u>See Albrecht v. Horn</u>, 485 F.3d 103, 129 (3d Cir. 2007) ("The ample if not overwhelming evidence of Albrecht's guilt . . . supports the conclusion that he suffered no prejudice as a result of counsel's deficient performance . . . ."); <u>Morales v. Clark</u>, No. 19-4971, 2021 WL 7278923, at *10 (E.D. Pa. Nov. 15, 2021) ("The strength of the prosecution's case is relevant to determining whether Petitioner was prejudiced by counsel's omission. Given these review principles and the strong evidence of guilt presented at trial, it is impossible to find that the state court unreasonably applied *Strickland*'s prejudice standard."), <u>report and recommendation adopted</u>, 2022 WL 622742 (E.D. Pa. Mar. 2, 2022); <u>Cho Lee Lin v. Bartkowski</u>, No. 10-5502, 2012 WL 3201943, at *35 (D.N.J. Aug. 1, 2012) ("Given the overwhelming evidence of guilt, this Court finds that the New Jersey courts' rejection of Petitioner's ineffective assistance claims for failure to show prejudice was not contrary to, or an unreasonable application of *Strickland* and its progeny.")

17

Thus, on this record, the state courts' rejection of Stewart's claim that counsel was ineffective for failing to file a motion pursuant to the Rape Shield Law was not contrary to or an unreasonable application of Strickland and its progeny, or based on an unreasonable determination of the facts in light of the evidence.  Habeas relief on this claim will therefore be denied.

        2.   Ground Two

           a.   Failure to Obtain a DNA Expert

Stewart alleges that his trial counsel was ineffective for failing to obtain a DNA expert to "perform DNA on untested evidence," including the samples collected from the exterior of B.S.'s body.  ECF No. 1 at 9.  Stewart argues that "[h]ad the evidence been tested, it would have potentially identified to an unknown contributor," which would be "fully consistent with the defense which was the petitioner had a prior consensual activity with the victim."  Id.

The state courts rejected this argument on the grounds that counsel's decision not to secure the testing was strategic.  The Appellate Division summarized the PCR court's holding as follows:

> [T]he [PCR] judge "indulge[d] the strong presumption that the decision not to seek DNA testing falls within the wide range of reasonable professional assistance or might be considered sound trial strategy."

18

As to the first <u>Strickland–Fritz</u> prong, the PCR judge
found trial counsel utilized the DNA evidence to
defendant's advantage by claiming the attacker could
not achieve an erection, penetrate B.S., or ejaculate
inside her.  Among other reasons, the court found
testing the additional specimens could have been
harmful to defendant's case if defendant's DNA matched
that contained in the additional specimens.

As to the second <u>Strickland–Fritz</u> prong, the PCR judge
found defendant did not demonstrate prejudice because
DNA testing of the additional specimens would not have
impacted the weight of the evidence, that is, B.S.'s
positive in-court and out-of-court identifications of
defendant, and her testimony that she had never seen
defendant prior to the day of the assault.

<u>Stewart</u>, 2017 WL 6014425, at *4.

In affirming, the Appellate Division analyzed the issue as

follows:

Trial counsel's decision to forego DNA testing of the
additional specimens was consistent with his well-
executed trial strategy.  That strategy was to
insulate his client from testifying in light of
defendant's lengthy criminal record.  Although the
nature of defendant's convictions was sanitized, had
defendant testified, the prosecutor undoubtedly would
have attempted to impeach his credibility by
referencing his convictions for a second degree
offense, and multiple third and fourth degree
offenses.  <u>See</u> <u>N.J.R.E.</u> 609.  Without defendant's
testimony, there was no other way for him to introduce
evidence of his purported prior consensual sexual
intercourse with the victim, and that her attacker
must have been a third party.

In light of the defense strategy, DNA testing of the
additional specimens was not a no-risk or clearly
advantageous option. Defense attorneys are required to
provide the results of such tests to the State. <u>Rule</u>
3:13-3(b)(2)(A).  Had one or more of the additional
specimens matched defendant's DNA, counsel could not
have argued, as he did, that defendant was not the
attacker because the attacker's sperm did not reach

19

B.S.'s cervix.  Because defendant's DNA was found on
B.S.'s cervical and vaginal specimens, defendant's DNA
potentially could have been found in B.S.'s "anal
swabs ... external genital swabs ... [and] dried
secretions collected from the exterior of the victim's
body."  Without testing the additional specimens,
counsel was able to argue to the jury B.S. and
defendant likely had sex on a prior occasion.

Viewed in context, there is no support for a finding
of anything other than a reasonable strategic decision
to forego DNA testing of the additional specimens. . .
. Thus, defendant's PCR claim based on trial counsel's
failure to hire a DNA expert and request DNA testing
was properly denied.

Stewart, 2017 WL 6014425, at *6.

These findings — i.e., that counsel's decision not to
retain a DNA expert and test the samples fell within the purview
of professional judgment — were not unreasonable.  Strickland,
466 U.S. at 689 (there is a strong presumption that counsel is
effective and the courts must be "highly deferential" to
counsel's reasonable strategic decisions); United States v.
Gray, 878 F.2d 702, 711 (3d Cir. 1989) ("the range of reasonable
professional judgments is wide and courts must take care to
avoid illegitimate second-guessing of counsel's strategic
decisions from the superior vantage point of hindsight").
Counsel's performance does not become deficient simply because
the strategy employed was unsuccessful or insufficient to
overcome strong evidence of guilt.  See Marshall v. Hendricks,
307 F.3d 36, 85 (3d Cir. 2002) (the existence of alternative,
even more preferable or more effective, strategies does not

20

satisfy the first element of the *Strickland* test); Lewis v.
Mazurkiewicz, 915 F.2d 106, 115 (3d Cir. 1990) ("[W]hether or
not some other strategy would have ultimately proved more
successful, counsel's advice was reasonable and must therefore
be sustained."); United States v. Jackson, No. 10-199, 2019 WL
1571671, at *4 (W.D. Pa. Apr. 11, 2019) ("Importantly,
reasonable trial strategy does not constitute ineffective
assistance of counsel simply because it is not successful.")
(cleaned up).

Given the defense theory that Stewart's DNA was found
inside B.S. due to a prior consensual encounter and the risk
that one or more of the untested exterior samples, if tested,
would have been shown to contain Stewart's DNA, the Appellate
Division reasonably determined that "there is no support for a
finding of anything other than a reasonable strategic decision
to forego DNA testing of the additional specimens." Stewart,
2017 WL 6014425, at *6.

Moreover, even if counsel had been somehow deficient for
not retaining a DNA expert and testing the samples, Stewart has
not established prejudice in light of the strong evidence of his
guilt discussed above. Accordingly, the state courts' rejection
of this claim was not contrary to or an unreasonable application
of Strickland and its progeny, or based on an unreasonable

determination of the facts in light of the evidence. Habeas relief on this claim will therefore be denied.

b.   Alleged New Evidence

In his reply submission, Stewart alleges that he "obtained by mail from a unanimous source the DNA samples that were tested by the Sciences Lab where all the s[a]mples were tested and it shows this new DNA does not belong to petitioner."  ECF No. 20 at 23-24.  Stewart asserts that this evidence, an anonymous letter dated September 21, 2020, "is material to the petitioner's defense and the failure of trial counsel to obtain an expert proves that petitioner's trial counsel was in fact ineffective."  Id. at 24.  He argues that "this DNA would have identified another contributor who may have been the person who actually committed the assault," and had this "newly discovered evidence been known to the jury at the time of [trial] then who is to say that the result would not have been different[?]"  Id. Stewart further states that "the question for this court is when did the prosecution [know] of this evidence[] and why did they [withhold] this newly discovered evidence[?]"  Id.

Although Stewart has not exhausted this claim, the Court may nevertheless deny it on the merits.  See 28 U.S.C. § 2254(b)(2); Carrascosa v. McGuire, 520 F.3d 249, 254-55 (3d Cir. 2008) ("Section 2254(b)(2) provides that '[a]n application for a writ of habeas corpus may be denied on the merits,

22

notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.' The District Court was thus well within its discretion to deny Carrascosa's unexhausted claim on the merits") (quoting 28 U.S.C. § 2254(b)(2)); Taylor v. Horn, 504 F.3d 416, 427 (3d Cir. 2007) ("[B]ecause we will deny all . . . claims on the merits, we need not address exhaustion."); Bronshtein v. Horn, 404 F.3d 700, 728 (3d Cir. 2005) ("[W]e may reject claims on the merits even though they were not properly exhausted, and we take that approach here."); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004) (addressing an unexhausted claim "because it is meritless and we can therefore dismiss it under 28 U.S.C. § 2254(b)(2)") (citation omitted).  For the reasons below, the claim is meritless and habeas relief is denied.

The alleged new evidence, attached to Stewart's reply submission (ECF No. 20 at 39-40), is a document, ostensibly from the "Criminal Record Unit, Atlantic County Criminal Courthouse," that reads as follows:

_____

Criminal Record Unit
Atlantic County Criminal Courthouse,
4997 Unmai Blvd.,
Mays Landing, N.J. 08330
_____

Dear Mr. Stewart:

>     While going through your criminal record, I came
>     across this information that I thought would be very
>     vital to you and your appeals. I understand that you
>     may have some question, but I advise you not to reply
>     to this address due to the fact that I am no longer
>     employed in this office.
>
>                                         Anonymous
>
>                                         September 21, 2020

ECF No. 20 at 39.  Stewart also provides an envelope with the

following return address (errors in original):

>     Criminal Recoed Unit
>     Atlantic County Criminal Courthouse,
>     4997 Unmai Blvd.,
>     Mays Landing, N.J. 08330

ECF No. 20 at 40.  The corner of the envelope bearing the

postmark is largely ripped off, leaving only a small portion of

the postmark visible, but not enough to identify where the

envelope originated from.  Id.

Putting aside that this purported letter does not specify

the "information" the anonymous author believes would be helpful

to Stewart, the letter's authenticity is, to put it mildly,

highly questionable.  First, it appears that the creator of this

document intended the letterhead to contain the return address

of the Criminal Records Room of the Atlantic County Criminal

Courts Complex, not, as the letter states, the "Criminal Record

Unit" at the "Atlantic County Criminal Courthouse."[4]  Second,

---

[4] See https://www.njcourts.gov/courts/criminal/records-room (last
visited Feb. 25, 2023).

24

even if "Criminal Record Unit" were correct, "Criminal Recoed
Unit," as the return address on the envelope reads, is not.  ECF
No. 20 at 40.  Third, the address of the Criminal Records Room
is 4997 Unami Boulevard, not "4997 Unmai Boulevard," as both the
letterhead and envelope state.  ECF No. 20 at 39-40;
https://www.njcourts.gov/courts/criminal/records-room.  Fourth,
the letterhead and return address on the envelope contain random
commas at the end of some of the address lines, and the
incorrect comma usage is inconsistent between the two addresses.
ECF No. 20 at 39-40 (the address on the letterhead contains a
comma at the end of the first three lines and the return address
on the envelope contains a comma at the end of the second and
third lines).

There are, of course, other reasons to doubt the
authenticity of this document, not the least of which is (1) the
content of the letter, which conveniently (and anonymously)
references "vital" information without identifying it, thereby
allowing Stewart to imply the existence of evidence (DNA results
that are not a match to Stewart) in support of an argument that
he apparently believes will "prove" his claim of ineffective
assistance; and (2) the timing of the letter, which conveniently
arrived after respondents answered the petition, but before
Stewart filed his reply.  However, the Court need not dwell on
the litany of reasons this document is likely fraudulent

25

because, as the state courts found, additional DNA testing, even if it had been done and the results contained DNA that was not a match to Stewart, would not change the outcome of the case.

The PCR court made this point in denying Stewart's ineffective assistance claim based on counsel's failure to obtain a DNA expert (discussed above) and again in denying Stewart's motion for post-conviction DNA testing:

> Turning to defendant's motion for post-conviction DNA testing pursuant to N.J.S.A. 2A:84A-32a, Judge Schuck carefully analyzed the statute's requirements and the case law interpreting the statute, concluding defendant's failure to satisfy two of the eight requirements set forth in N.J.S.A. 2A:84A-32a(d)(1)—(8). Specifically, defendant failed to demonstrate the additional specimens were material to the issue of his identity pursuant to N.J.S.A. 2A:84A-32a(d)(4). Nor could defendant show that if the results were favorable, a motion for a new trial based upon newly-discovered evidence would be granted pursuant to N.J.S.A. 2A:84A-32a(d)(5).
>
> Judge Schuck's rationale was similar to that supporting his denial of defendant's PCR ineffective assistance of counsel claims. Citing State v. Relden, 373 N.J. Super. 396, 407 (App. Div. 2004), certif. denied, 182 N.J. 628 (2005), the judge found favorable results would not obviate the facts that: defendant's DNA was found inside B.S.'s vagina and cervix; B.S. positively identified defendant; he could not prevail at a rape shield hearing; and his defense that he had sex with B.S. on a prior occasion was belated.

State v. Stewart, No. A-5142-14T4, 2017 WL 6014425, at *4, *7 (N.J. Super. Ct. App. Div. Dec. 5, 2017).

The Appellate Division affirmed the PCR court's denial of the motion on the basis that the DNA samples are not "new evidence":

> [W]e concur with Judge Schuck's denial of such testing. Indeed, one of the key factors in determining the motion is number five, that is, whether there is a "reasonable probability" that a motion for a new trial would be granted if the DNA results proved to be favorable to the defendant. N.J.S.A. 2A:84A-32a(d)(5).
>
> Moreover, it is well-settled that to obtain a new trial based on newly-discovered evidence, the defendant must establish the new "evidence is (1) material, and not 'merely' cumulative, impeaching, or contradictory; (2) ... was discovered after completion of the trial and 'was not discoverable by reasonable diligence beforehand';" and (3) could "probably change the jury's verdict if a new trial [was] granted." State v. Ways, 180 N.J. 171, 187 (2004) (emphasis added) (quoting State v. Carter, 85 N.J. 300, 314 (1981)).
>
> However, because we are satisfied trial counsel's decision in not testing the additional specimens was sound and strategic, and not ineffective, we conclude the additional specimens are not new evidence. Indeed, the additional specimens were known at the time of trial; counsel chose not to test them for the reasons set forth above.
>
> Simply put, even if the results of the additional specimens could be construed as favorable to defendant, the specimens are not new evidence and, as such, defendant would not be entitled to a new trial. We, therefore, affirm on that basis. . . .
>
> . . . . Defendant failed to establish the untested specimens are newly-discovered evidence because they were known at trial. That failure is fatal to his request for DNA testing. N.J.S.A. 2A:84A-32a.

Stewart, 2017 WL 6014425, at *4, *7 (emphasis in original).

Even if this alleged evidence demonstrated that the DNA samples were from someone other than Stewart, which for the reasons set forth above it does not, the ineffective assistance analysis remains the same.  As the Appellate Division found and this Court agrees, counsel employed "a reasonable strategic decision to forego DNA testing of the additional specimens." Stewart, 2017 WL 6014425, at *6.  Thus, Stewart has failed to establish deficient performance.  Further, given the strong evidence of guilt, Stewart has also failed to establish prejudice.  Accordingly, habeas relief will be denied on this claim.

### 3.   Ground Three: Failure to Investigate

Stewart asserts in Ground Three that counsel's theory of the case was that "the petitioner and the victim had consensual sex three days prior to the attack," yet counsel did not move for a hearing pursuant to the Rape Shield Law.  ECF No. 1 at 10. Stewart contends that counsel mistakenly believed "he could ask the victim about the prior sexual encounter on cross-examination" without a hearing.  Id.  Stewart argues that this is evidence that counsel failed to "perform sufficient investigation to proper[ly] prepare a defense" and, thus, rendered ineffective assistance.  Id.  For the reasons discussed in Section III.B.1., above, Stewart has not demonstrated that he is entitled to habeas relief on this claim.  As discussed above,

28

Stewart's allegations are contrary to the record and the state courts reasonably found Stewart failed to establish that counsel was ineffective for failing to move for a hearing.

In his reply submission, Stewart raises additional allegations of ineffectiveness on the grounds of failure to investigate, including that counsel was deficient for failing to (a) investigate B.S.'s alleged criminal history, (b) provide "full disclosure of his discovery including the tested DNA s[a]mples that [were] not disclosed," (c) "request . . . a bill of particular[s] as to obtain the statement of the victim when she never identified the petitioner in the photo line-up," (d) "inform petitioner of what evidence the prosecution had against him by way of any statements made against [him]," and (e) "allow petitioner to view all of his discovery in relation to the victim background." ECF No. 20 at 19–20, 30–31.

As proof that his counsel or the prosecution withheld exculpatory material, Stewart:

> points to the fact that he was able to obtain some of his discovery through a unanimous [sic] source pertaining to the newly discovered DNA sample. (Pa-1) Counsel's duty was to make sure that Petitioner had the right tools for the defense.  This proves that the prosecution was withholding information from petitioner that would ha[ve] placed a great doubt to the process of the trial and had the jury heard or seen this new evidence it would [have] changed the outcome of the proceeding.

ECF No. 20 at 31.

As to Stewart's claim that the DNA samples were not disclosed, as the state courts reasonably found, the record contradicts this allegation and it thus lacks merit.  ECF No. 16-59 at 25 (PCR judge: "[T]he fact that the state's expert did not examine all the samples taken from the victim's body was, in fact, revealed during the direct examination of Kerri O'Toole"); ECF No. 16-53 at 20-21 (O'Toole testified that the sexual assault kit she received contained vaginal specimens, anal specimens, oral specimens, head hair combings, pubic hair combings, fingernail specimens, buccal control swabs, debris, and dried secretions); id. at 28 (when asked whether she examined all the specimens, O'Toole responded: "I did not. . . . From a case management perspective I felt that the samples that I had examined . . . had a sufficient amount there to generate a DNA profile.").

As to Stewart's claim -- based upon the alleged anonymous correspondence from the "Criminal Record Unit" -- that he was not provided "tested DNA s[a]mples," for the reasons discussed in Section III.B.2.b., Stewart has not established DNA testing results were withheld from him.

As to Stewart's claim that "the victim . . . never identified the petitioner in the photo line-up," this too is contradicted by the record.  Detective Ava Berry of the Camden City Police Department testified at the Wade hearing that at the

30

photographic lineup B.S. believed with 60% accuracy that Stewart was her attacker.  ECF No. 16-48 at 55.  For this reason, the trial court denied defense counsel's motion in limine to exclude the photo array.  ECF No. 16-48.

More importantly, Stewart fails to explain how receiving additional information regarding the photographic lineup, if any such information exists, supports his claim that counsel was ineffective.  Stewart also fails to provide any evidence in support of this claim.  His bald assertion does not provide a basis for habeas relief. See Palmer v. Hendricks, 592 F.3d 386, 395 (3d Cir. 2010) ("bald assertions and conclusory allegations" cannot establish an ineffective assistance of counsel claim); Arellano v. Davis, No. 19-1001 (JMV), 2022 WL 819601, at *10 (D.N.J. Mar. 18, 2022) ("the Appellate Division . . . reasonably concluded that Petitioner's vague and conclusory allegations were insufficient to demonstrate that counsel was ineffective").

As to Stewart's remaining allegations that he was not advised of the evidence against him and did not receive "all of his discovery," these too are unsupported and conclusory assertions that do not provide a basis for habeas relief.  See Melendez v. New Jersey, No. 18-8404, 2022 WL 16922145, at *15 (D.N.J. Nov. 8, 2022) ("Melendez simply restates the claims he brought before the state courts in conclusory fashion and he provides no argument, affidavits, or other evidence in support

of his conclusory allegations that counsel was ineffective for
failing to interview and prepare alibi witnesses; pursue a
dismissal; explore challenges to co-defendant statements, plea
agreements and sentencings; subject State witnesses to rigorous
cross-examination; call potentially critical witnesses; and
challenge evidence. Simply characterizing counsel's performance
as inadequate does not meet a habeas petitioner's burden. The
unsupported and conclusory nature of Melendez's allegations is
reason enough to deny habeas relief.").

For these reasons, the state courts' finding that Stewart
has not established ineffective assistance of counsel for
failure to investigate was not unreasonable. Stewart, 2017 WL
6014425, at *6 ("When a defendant asserts his attorney has
inadequately represented him, he must assert the facts that an
investigation would have revealed, supported by an affidavit or
certification based upon his personal knowledge. Here, defendant
has done no more than make bald assertions that he was denied
the effective assistance of counsel."). Accordingly, the state
courts' rejection of Stewart's failure-to-investigate claim was
not contrary to or an unreasonable application of Strickland and
its progeny, nor was it based on an unreasonable determination
of the facts in light of the evidence. Habeas relief on this
claim will be denied.

4.   Ground Four: Failure to Present Alibi Witness

Stewart argues that counsel was ineffective for failing to call his aunt, Dawn Stewart, as an alibi witness. ECF No. 1 at 12. Stewart asserts that "[b]efore trial petitioner told his trial counsel that when the assault occurred, he was at his Aunt Dawn Stewart['s] house.  That his Aunt Dawn Stewart would testify to that."  Id.  However, "counsel elected not to call her." Id.

The PCR court rejected this claim (ECF No. 16-59 at 26), and the Appellate Division affirmed as follows:

> Judge Schuck found defendant's remaining claims lacked merit, including defendant's contention trial counsel failed to speak with two purported alibi witnesses, George Bucks and Dawn Stewart.[5]  Citing State v. Petrozelli, 351 N.J. Super. 14, 23 (App. Div. 2002), the judge observed defendant failed to support this claim by an affidavit or certification of his witnesses.  Moreover, the court noted Dawn Stewart's pretrial statement to law enforcement indicating she could not vouch definitively that defendant was at her house the day of the assault.

> State v. Stewart, No. A-5142-14T4, 2017 WL 6014425, at *4

(N.J. Super. Ct. App. Div. Dec. 5, 2017); see also ECF No. 16-59 at 26 (PCR judge: "[T]he state provides an interview record from 2006 in which Dawn Stewart specifically stated that she could not say with certainty that the defendant was at her house the day of the attack.").

---

[5] The Appellate Division noted that Stewart argued on appeal that "trial counsel failed to present his alibi witnesses, including his aunt, Dawn Stewart, but did not reference George Bucks." Stewart, 2017 WL 6014425, at *4 n.7 (quotations omitted). Stewart also does not reference Bucks in his habeas petition.

The decisions of which witnesses to call to testify are strategic, and therefore left to counsel.  Diggs v. Owens, 833 F.2d 439, 446 (3d Cir. 1987); see also Henderson v. DiGuglielmo, 138 F. App'x 463, 469 (3d Cir. 2005) ("Counsel's failure to call a witness 'is precisely the sort of strategic trial decision that Strickland protects from second-guessing.'").  This includes decisions regarding alibi witnesses. See Ruiz v. Lawler, No. 11-1993, 2015 WL 5144369, at *5 (E.D. Pa. Aug. 31, 2015) ("The decision to have an alibi witness testify at trial is a strategic decision" that "carries a strong presumption of reasonableness.") (citing Strickland, 466 U.S. at 689), aff'd sub nom. Ruiz v. Superintendent Huntingdon SCI, 672 F. App'x 207 (3d Cir. 2016).

The state courts reasonably found that Stewart failed to establish that counsel was deficient by failing to call Dawn Stewart as an alibi witness.  First, Stewart did not provide an affidavit or certification from his aunt containing the substance of her proposed testimony.  See Lewis v. Horn, 581 F.3d 92, 107-8 (3d Cir. 2009) (petitioner who did not present affidavits from potential alibi witnesses concerning their proposed testimony failed to establish ineffective assistance).

Second, Stewart's assertion that Dawn Stewart would testify that he was at her house when the assault occurred is contrary to the record, which establishes instead that Dawn Stewart was

not certain that Stewart was at her house the day of the crime. ECF No. 16-59 at 26.  In light of this and the strong evidence of guilt, Stewart has also not established prejudice. Accordingly, the state courts' rejection of this claim was not contrary to or an unreasonable application of <u>Strickland</u> and its progeny, or based on an unreasonable determination of the facts in light of the evidence.  Habeas relief on this claim is denied.

IV.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003). Here, reasonable jurists would not find the Court's habeas ruling debatable. Accordingly, no certificate of appealability shall issue.

V. CONCLUSION

For the foregoing reasons, Stewart's petition will be denied with prejudice and no certificate of appealability shall issue.

An appropriate order follows.


Dated: February 28, 2023           s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.